MICHAEL P. MANGAN (MM-5773)
*The Law Offices of*
Michael P. Mangan LLC
160 Pearl Street, Suite 610
New York, New York 10005
Phone (212) 248-2171
Fax: (212) 248-2155
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ANNETTE BROWN,

                        Plaintiff,                    09 CV 3282 (JBW)(RLM)

      - against -

STARRETT CITY ASSOCIATES, OFFICER NEWMAN,
and JOHN DOES A-F, JANE DOES 1-5 the name "Doe" being
fictitious and intended to represent those security officers
employed by STARRETT CITY ASSOCIATES who were
involved in the use of unlawful search and seizure
false imprisonment, false arrest, excessive force, assault and
battery and malicious prosecution against Plaintiff,

                        Defendants.
------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S APPLICATION FOR ATTORNEY'S FEES
PURSUANT TO 42 U.S.C. §§ 1988 AND 1927**


August 15, 2011

## I. Introduction

Plaintiff moves for attorney's fees pursuant to both 42 U.S.C. § 1988 and §1927 following jury trial before the Hon. Jack B. Weinstein between July 5-8, 2011. The jury found that the defendants were liable to plaintiff under 42 U.S.C. § 1983 for excessive force in the amount of $500, and were not liable for false arrest. Following the verdict, plaintiff moved for attorney's fees as prevailing party, and the Court granted the application, stating that the application would be referred to the Magistrate Judge to determine the amount of the fee. Plaintiff submitted to the Court and to defendants' counsel, a copy of contemporaneous billing records, and disbursements on July 15, 2011. The total number of hours billed is 244.50 at counsel's rate of $300 per hour for a total of $73,350.00. If the Court determines that the amount should be reduced as to § 1988 fees, the plaintiff is also entitled to fees for defendants' unnecessary multiplication of proceedings.

## II. Litigation History

### A    Plaintiff's Claims

Plaintiff, Annette Brown, retained the Law Offices of Michael P. Mangan in January 2009 to commence a civil rights action related to her arrest and excessively force-handcuffing claims. Ms. Brown's claims related to events that took place at the building complex where she lives, Starrett City (now known as Spring Creek Towers) when on July 28, 2008, she was arrested at or about 10:00 pm, and handcuffed, by peace officers employed by defendant Starrett City Associates.

II

Specifically, Ms. Brown claimed that on the night of July 28, 2008, she heard a teenagers shouting near to where she lived, and thinking that her children could be near to the scene, she entered into the area to tell her children to go home. Once there, she saw Starrett City peace officers, including defendant Sergeant Ruppert Newman. While tell her children to go home, a fifteen year-old girl, that she knew, Diamond Medlock, was in handcuffs and held by Sgt. Newman. Medlock asked if Ms. Brown would fix her shirt that was coming down, and Ms. Brown pulled the strap of the shirt back over Medlock's shoulder, while Medlock's arms were handcuffed behind her.

Sgt. Newman, who had been holding Medlock, then grabbed Ms. Brown, turned her around and handcuffed her. While she was being handcuffed, Ms. Brown informed Sgt. Newman that she had pre-existing injury to her wrists, carpal tunnel syndrome, and requested that he please be careful. Sgt. Newman, despite these pleas, handcuffed her very tightly.

Annette Brown was transported to the Starrett City Department of Public Safety ("DPS"), where she was handcuffed to a chair, and detained while a charge of disorderly conduct was written up in a summons to be given to her. While there, she complained of pain in her wrists and asked repeatedly if the handcuffs could be loosened or removed.

Eventually, the cuff on her left wrist was removed. Ms. Brown's wrists were swollen and Starrett Security officers called an ambulance. Emergency Medical Services entered into the DPS station house and attended to Ms. Brown, eventually removing her to Kings County Hospital that night.

Annette Brown was charged with disorderly conduct under New York Penal Law and was given an adjournment in contemplation of dismissal. That charge was eventually dismissed.

Plaintiff commenced this action in the Eastern District of New York on July 29, 2009, asserting claims for excessive force, false arrest and malicious prosecution pursuant to 42 U.S.C. §1983 and state law claims for assault and battery, and negligent hiring. (*See* Plaintiff's Complaint, attached to Mangan Decl., "**Exhibit 1**".) Prior to trial, plaintiff withdrew her claims for malicious prosecution, and negligent hiring.

Annette Brown alleged that she had suffered asymptomatic carpal tunnel syndrome bi-laterally for many years, and that she began to suffer symptoms again as a result of the exacerbation injury in July 2008. Ms. Brown saw a surgeon in September 2008, and then two years later scheduled and had carpal tunnel release surgery performed by second surgeon.

B.    Discovery Phase

Defendant Newman and officer Joanne Phillips were presented by defendants and were deposed in April 2010. Newman and Phillips took the following positions during their sworn depositions: (1) Phillips not Newman handcuffed and arrested both females, Diamond Medlock and Annette Brown, (2) Annette Brown charged at Phillips and attempted to pull Diamond Medlock away from Phillips, (3) Newman ordered that Brown be arrested only after Brown refused to release Medlock, (4) Brown's hands showed no injury or swelling, (5) Brown refused treatment from the EMS, (6) Brown did not go to the hospital, (7) Brown complained about her left wrist not her right wrist.

Defendants produced documents that included the officers' memo-books and arrest paperwork. There was no mention of Brown attempting to either grab or free Diamond Medlock at any time. The only narrative about Ms. Brown's conduct from that night was that she had refused to abide by the officers' order that she disperse.

3

These positions taken by the defendants were not only contradicted by their own records of these events, but by the FDNY ambulance report that stated there was bilateral swelling on Ms. Brown's wrists when they arrived, and that they had transported her to Kings County Hospital.

Defendants requested three extensions for medical expert disclosure pursuant to Federal Rule of Civil Procedure 26 (a)(2), and each was granted by Your Honor, extending the defendants deadline for the disclosure from August 2, 2011 to January 7, 2011. Despite these several requests, defendants did not make an expert disclosure pursuant to Rule 26 at any time prior to or during trial.

In June 2011, after the parties exchanged trial witness lists, the parties conducted the depositions of defendant employee Sgt. Boyz Liang, who authored all relevant arrest paperwork, and Aubrey Hendricks, plaintiff's foster son. Aubrey Hendricks, who plaintiff had listed as a trial witness, but who was not a party, was presented by counsel for plaintiff without need of a subpoena. These depositions were held in the defendants' counsel's law offices, upon mutual agreement, on June 20, 2011.

C. Settlement Conference: July 13, 2010

A settlement conference was held before Your Honor on July 13, 2010, which was attended on behalf of plaintiff by myself and my colleague, Jonathan Ginsberg. On behalf of the defendants were present Tanya Branch and Joshua Lindy.

During the settlement conference, counsel for defendants accused the plaintiff of making several misrepresentations regarding her injuries. Specifically, counsel for the defendants stated that plaintiff had refused medical treatment after requesting an ambulance and that she had not

4

gone to the hospital. Counsel also stated that plaintiff had complained only of pain in her left hand and that during the litigation alleged that her right hand had been injured.[1]

At the close of the settlement conference, Your Honor recommended that the parties settle the case for the amount of $23,000.00. At that time, counsel for plaintiff had spent approximately forty-five (45) billable hours on the case. The Court instructed counsel to each call the Court separately to inform whether or not the amount would have been accepted by each party. Plaintiff agreed to accept that amount, and I called to inform the Court of this by the deadline, however the defendants apparently rejected this offer.

        D.      <u>Frivolous Summary Judgment Motions: Feb. 28, 2011 and Mar.18, 2011</u>

Despite the nature of plaintiff's claims for false arrest, excessive force, and assault and battery, the defendants made two separate motions for summary judgment. Both were frivolous, and defendants admitted as much by withdrawing the first motion.

Defendants' first motion for summary judgment was made on February 28, 2011 by ECF. Defendants' memorandum of law and Local Rule 56.1 Statement of Undisputed Material Facts were based almost entirely on the defendants' own statements of the facts rather than the sworn disputed facts asserted by the plaintiff in her deposition. Plaintiff was, of course, the non-moving party. (*See* Defendants February 28, 2011 Motion for Summary Judgment attached to Mangan Decl., "**Exhibit 2**".)

On March 10, 2011, I wrote to counsel and advised defendants to withdraw the motion on the grounds that is was frivolous. (*See* Mangan March 10, 2011 Letter to Counsel, attached to

---

[1] These attacks by counsel were themselves misrepresentations that are contradicted by the EMS ambulance record and Kings County Hospital Records, all of which were entered into evidence at trial and which were available to defendants' counsel prior to the settlement conference. The defendants' trial witnesses also contradicted these statements.

5

Mangan Decl., "**Exhibit 3**".) In response, the defendants withdrew the motion, and wrote to Judge Weinstein requesting that they be permitted to re-file the motion on the grounds that the wrong version of the motion had been erroneously filed by ECF two weeks earlier. (*See* Defendants' March 15, 2011 Letter to Court, attached to Mangan Decl., "**Exhibit 4**".) Defendants stated that draft versions of the Memorandum and Rule 56.1 Statements had been inadvertently filed, despite the fact that both had been signed. (*Id*.)

Leave to amend was granted and on March 18, 2011 defendants filed their second motion for summary judgment, again relying almost entirely on the defendants' own version of the facts and ignoring the non-moving party's, plaintiff's, sworn version of the facts. (*See* Defendants March 18, 2011 Motion for Summary Judgment attached to Mangan Decl., "**Exhibit 5**".)

Plaintiff was obligated to oppose the motion, as it had prepared to oppose the first frivolous motion for summary judgment, and oral argument was held on May 10, 2011. Summary judgment was denied as to the claims for false arrest, excessive force and assault and battery, for which Judge Weinstein determined there were clearly material questions of fact.

  E. <u>Pre-Trial Proceedings</u>

Plaintiff gave the defendants notice of several trial witnesses including treating physicians Robert Pae, M.D., Michael A. Stracher, M.D., and Areta Podorecki, M.D. Plaintiff proposed to have these witnesses testify as treating physicians pursuant to the generally recognized rule that treating physicians can testify without the need for Rule 26 (a)(2) expert disclosure. *See, e.g.*, *Cruz v. Henry Modell & Company Inc.*, 2008 WL 905356 (E.D.N.Y.); *Zanowic v. Ashcroft*, 2002 WL 373229 (S.D.N.Y.)

Defendants, however, moved *in limine* to preclude the testimony of all of plaintiff's medical witnesses on the grounds that plaintiff did not make Rule 26 expert disclosure for these witnesses. Defendants' motion did not recognize the rule about treating physicians in their motion papers, and did not discuss the distinction between treating physicians and other experts. At oral argument on June 23, 2011, Judge Weinstein ruled that plaintiff must provide expert reports contemplated by Rule 26 by June 27, 2011 for all medical experts plaintiff intended to call at trial. Plaintiff complied by retaining Dr. Robert Pae as the sole testifying medical witness.

On June 28, 2011, defendants made a motion to either adjourn the trial or produce an address for Aubrey Hendricks, who had recently moved. (*See* Defendants June 28, 2011 Motion to Adjourn attached to Mangan Decl., "**Exhibit 6**".) The parties had, however, agreed that a subpoena for Mr. Hendricks was not necessary and that plaintiff would produce Hendricks in her case in chief. Defendants did not mention this in their motion, which was frivolous.

Pursuant to the order of the Court that proposed jury charges be submitted to the Court by June 28, 2011. Defendants filed the proposed jury charges on June 29, 2011, and included a "conflicting expert testimony" charge, though defendants were aware that they had not served an expert report, nor had they name a medical witness in their trial witness notice. Plaintiff was forced to move to preclude this charge, and did so by motion on June 30, 2011. (*See* Plaintiff June 30, 2011 Motion to Preclude attached to Mangan Decl., "**Exhibit 7**".)

E.   Jury Trial: July 5-8, 2011

A jury trial was held before the Hon. Jack B. Weinstein between July 5-8, 2011. The witnesses presented by the plaintiff in support of her claims were as follows: (1) plaintiff Annette Brown, (2) plaintiff's foster-son, Aubrey Hendricks, who was a witness to plaintiff's arrest and

7

was present with her in the ambulance that brought her to Kings County Hospital, (3) Diamond Medlock, who was a witness to her own arrest and to plaintiff's arrest, and (4) treating orthapaedic surgeon, Robert Pae, M.D., who treated plaintiff prior to her arrest and examined her two months after the arrest and ordered tests.

Plaintiff testified about the events surrounding her arrest and handcuffing. She testified that she was arrested immediately after fixing Diamond Medlock's shirt, and that she did not otherwise touch Ms. Medlock. Plaintiff testified that Ms. Medlock was held in custody by Sgt. Newman and that Sgt. Newman also arrested and handcuffed her. Plaintiff testified that she complained to Sgt. Newman, and to officers inside the DPS that the handcuffs were too tight and asked that they be loosened or removed.

Aubrey Hendricks testified that he saw that a male officer hold Diamond Medlock in custody, and that the same male officer arrested and handcuffed Annette Brown. Hendricks testified that Ms. Brown did not charge at officer Phillips or try to pull Medlock away from any officer.

Diamond Medlock testified that she was arrested and handcuffed by a male officer and that the same male officer, as she could tell, arrested and handcuffed Annette Brown after Brown had fixed Medlock's shirt. Medlock testified that Ms. Brown did not charge at any officer nor did Brown attempt to pull Medlock away from any officer.

Dr. Robert Pae testified that he was an orthapaedic surgeon and expert in hand surgery. He testified that he had treated Ms. Brown for an elbow ailment in 2004, and saw her again in September 2008 when she complained about an exacerbated carpal tunnel condition. Dr. Pae also reviewed Ms. Brown's hospital record at Kings County Hospital Emergency Room for July 30-31, 2008, the FDNY/EMS ambulance report and the Brookdale Hospital records for Ms.

Brown's July 2010 carpal tunnel release surgery.  He testified that in his opinion, the handcuffing could have caused an exacerbation of carpal tunnel syndrome and that depending upon the pain reported by Ms. Brown prior to the July 2010 surgery, that surgery could be indicated.

After the plaintiff rested, on July 6, 2011, for the first time, defendants made an oral application to put on a medical expert.   Judge Weinstein reserved judgment until the following day on July 7, 2011.  Plaintiff filed a motion on July 7, 2011 objecting to the defendants' frivolous attempt to introduce a medical expert though they had long ago waived their right to such an expert and did not even mention it to the Court at any time before July 6, 2011, in the midst of trial.

Defendants' first trial witness was Officer Joanne Phillips who testified that plaintiff refused treatment and refused to go to the hospital.  Phillips also equivocated as to what happened during the arrest, and was inconsistent with her sworn deposition testimony. Following the trial, and outside the presence of the jury, Judge Weinstein stated his opinion that Officer Phillips "lied throughout" that he was "appalled" by her testimony, and calling parts of it "outrageous."  (*See* July 8, 2011 Trial Proceedings Trans. at p. 21:12-21, attached to Mangan Decl., "**Exhibit 8**".)

Officer Phillips' testimony was contradicted by the FDNY/EMS ambulance report and the Kings County Hospital records, and was otherwise inconsistent with the defendants' own records.   Phillips also testified that she had made a memo-book entry consistent with her testimony, but admitted that the entry she made could not prove the date on which the entry was written and that the entry did not comply with the rules for making such an entry.

9

Phillips offered perjured testimony to support the defendants' theory of the case. Phillips' perjured testimony was consistent with the other defense witnesses, all of whom gave conflicted versions of the events.

Sergeant Liang was put on to testify, and did testify, that both Medlock and Brown were not arrested and handcuffed by Sgt. Newman. Liang admitted on cross-examination that he had no independent recollection of these events. His written records, from which he relied upon to testify, did not state who arrested and handcuffed the two females, Diamond Medlock and Ms. Brown.

Sgt. Newman testified to three different versions of what lead up to Ms. Brown's arrest and handcuffing. He gave one version on direct through the questioning of defense counsel. The second version was given on cross examination when he admitted that omitted relevant facts during direct. And the third version, significantly inconsistent with the first two, was his deposition account. These contradictions were shown during cross-examination.

Plaintiff did not suggest an amount of appropriate damages during summation, nor did the jury learn of the amount of the plaintiff's *ad damnum* during the trial.

Judge Weinstein charged the jury on July 8, 2011. The charges did not include a charge for punitive damages, over plaintiff's objection. The charges reduced the claims, for purposes of efficiency, to two constitutional deprivation charges, fitting the state law claims for assault and battery into the § 1983 excessive force claim.

The Jury began deliberation in the morning and returned a verdict in the afternoon, finding the defendants liable for excessive force in the amount of $500, and not liable for false arrest.

10

F. <u>Post-Verdict Application for Attorneys' Fees Pursuant to § 1988</u>

At the start of the trial, the parties stipulated to allow the Court to determine whether attorneys' fees were appropriate and should be granted to the prevailing party, pursuant to 42 U.S.C. § 1988. After the verdict, plaintiff moved for attorneys' fees and judge Weinstein granted the application, stating:

> [Plaintiff's counsel] is entitled to attorney's fees. The benefit to the plaintiff was quite substantial from this trial, the main issue, in any event, clearly from the beginning was excessive force. It was clear from the beginning that the false arrest claim was not pressed strongly, and was not relied upon strongly, and it was the excessive force that is the main issue in the case.

(Exhibit 8, at p 29:19-25.)

In addition, Judge Weinstein stated at the close of evidence that he understood why "plaintiff's attorney – an excellent attorney – took the position he did." (*Id*. at p. 20:17-19.) Judge Weinstein also stated that plaintiff's attorney is "very experienced and very able" and that "plaintiff's attorney said they were lying. Well, I think he may have well been right. They were lying. Newman was probably the one who did it." (*Id*. at p. 18:16-19.)

### III. Attorney's Fees

A. <u>Fees Under Section 1988</u>

The purpose of § 1988 fee-shifting statute permits a prevailing party a reasonable attorney fee. 42 U.S.C. § 1988. The statute encourages private attorneys to represent plaintiffs in civil rights actions who would not otherwise find legal representation. The basic principle is that legislature, and the Courts, determined that civil rights litigation holds a position of importance in our society. *See, e.g., Arbor Hill Concerned Citizen Neighborhood Ass'n v. County Albany*, 522 F.3d 182 (2008).

11

Commonly relied upon in determining a reasonable fee, is the lodestar method, which has been generally accepted by the Supreme Court of the United States, *Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662 (2010), and the Second Circuit Court of Appeals. *See*, *Arbor Hill Concerned Citizen Neighborhood Ass'n v. County Albany*, 522 F.3d 182 (2008)(though Arbor Hill calls this method into question in its ability to provide a "presumptively reasonable fees" it appears that the Second Circuit continues to accept the general fee calculation methodology.)

In applying the lodestar analysis to plaintiff's contemporaneous billing hours at an hourly legal fee of $300/hour, for 244.5 hours, for a presumptively reasonable fee of $73,350.

In light of the Supreme Court's opinion in *Farrar v. Hobby*, 506 U.S. 103 (1992), finding that a nominal award or technical victory may not confer an award of fees under § 1988, courts have consistently found that even a modest compensation award justifies attorney's fees under §1988. *See, e.g.*, *Sigal v. Moses*, 2010 WL 653493 (S.D.N.Y); *Anderson v. City of New York*, 132 F.Supp.2d 239 (2001)("Although this case created no new rule of liability it nonetheless served 'some public goal.' Even a modest award of damages in an excessive force case against police officers confers an 'overall benefit to society,' because an individual damage action to redress instance of police misconduct is often the only tool reasonably available to vindicate society's interst in ensurein that those who enforce the law also abide by it. *Milwe v. Vavuoto*, 653 F.2d 80, 84 (2d Cir. 1981).") *Cf. Adams v. Rivera*, 13 F.Supp.2d 550 (S.D.N.Y 1998).

In this action, the defendants took false positions which the jury determined were false in the verdict. The jury found that Sgt. Newman injured plaintiff by using excessive force, despite his allegations that he did not arrest or handcuff the plaintiff. The defendants' false positions made the degree of difficulty that much greater in having to prove the defendants' witnesses to be false and proffering perjury.

B.  Fees Under Section 1927

The defendants conduct during litigation caused unnecessary additional expense in litigating plaintiff's claims, including, most particularly, the two frivolous motions for summary judgment, and the application mid-trial to have a medical expert testify despite having waived the right to such an expert more than six months earlier.  The total number of hours expended in researching and opposing the two motions for summary judgment was 47.40 hours.  The time spent in opposing the defendants' mid-trial motion to put on expert testimony was 4.0 hours.

In addition, the defendants' positions contradicted by all medical records and the defendants' own arrest records, demonstrated bad faith conduct, causing additional and unnecessary litigation expense throughout the stages of discovery, motion practice and trial. Plaintiff is entitled to receive a reimbursement for legal fees and other unnecessary expense for this multiplicity of the proceedings, pursuant to § 1927.  *See* 28 U.S.C. §1927, *and*, *e.g.*, *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999).

V. CONCLUSION

Plaintiff respectfully requests that this Honorable Court grant plaintiff's motion for fees in the amount of $73,350, with disbursements under § 1988 in the amount of $10,407.93, and to grant any and all additional relief that this Honorable Court deems necessary and proper.

    Respectfully Submitted,
    /s/
    _____
    Michael P. Mangan (MM-5773)
    Attorneys for Plaintiff
    160 Pearl Street, Suite 610
    New York, New York 10005
    (212) 248-2171