MICHAEL P. MANGAN (MM-5773)
*The Law Offices of*
Michael P. Mangan LLC
160 Pearl Street, Suite 610
New York, New York 10005
Phone (212) 248-2171
Fax: (212) 248-2155
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANNETTE BROWN,

                                      Plaintiff,                09 CV 3282 (JBW)(RLM)

        - against -

STARRETT CITY ASSOCIATES, OFFICER NEWMAN,
and JOHN DOES A-F, JANE DOES 1-5 the name "Doe"
being fictitious and intended to represent those security
officers employed by STARRETT CITY ASSOCIATES
who were involved in the use of unlawful search and seizure
false imprisonment, false arrest, excessive force, assault and
battery and malicious prosecution against Plaintiff,

                                      Defendants.
-----------------------------------------------------------------x

## REPLY MEMORANDUM IN FURTHER SUPPORT
## OF PLAINTIFF'S APPLICATION FOR ATTORNEY'S FEES

September 21, 2011

## I. SUMMARY OF REPLY

Defendants oppose Plaintiff's Motion for attorney's fees under § 1988 on the grounds that plaintiff's only prevailed nominally and is entitled either to no fee or less than two hundred dollars. In opposition to plaintiff's motion pursuant to 28 U.S.C. § 1927, defendants argue that their defense was zealous but not frivolous. Defendants do not dispute the reasonability of plaintiff counsel's hourly rate, nor do the defendants attack any specific hours spent by plaintiff's counsel. Defendants' motion fails to consider, however, that the presiding judge at trial, the Hon. Jack B. Weinstein, has already ruled that plaintiff's counsel is entitled to a reasonable fee under § 1988, and that Judge Weinstein denied the defendants' application for attorneys fees at the conclusion of trial. Defendants' singular point that plaintiff's award was nominal and insufficient for attorney's fees, has already been decided against them and is the law of the case. Plaintiff respectfully submits that a fee based on the hours submitted, multiplied by the hourly rate, be used to determine the fees requested, and that the expenses of litigation, also be awarded under § 1988. Plaintiff is also entitled to the reasonable fees and expenses required to prepare this fee application.

## II. INTRODUCTORY STATEMENT

The contest at trial over Annette Brown's claims held two unique features: the context within which the claims were brought against a private police force by a member of the same small private community; and the manner of the defendants' defense in which they (i) denied that the defendant was the offending actor, (ii) denied Annette Brown had been injured or sought medical treatment, and (iii) accused her of new and undocumented wrongful acts to justify their arrest of her.

II

Annette Brown had lived in the housing complex of Starrett City for more than ten years, which is a community unto itself, with its own internal shopping centers, houses of worship, schools and security force. Starrett City has its own community boards and other organizations dedicated to the life of the Starrett City community, according to the trial testimony. Annette Brown interacts with the members of this insulated community on a weekly, daily and hourly basis, inside of the confines of Starrett City. And Annette Brown continues to live in Starrett City, and has lived there for three years since bringing this action in 2009 against Starrett City and one of its police supervisors. This action to vindicate constitutional rights against the security force of Starrett City, has significance not only to Annette Brown, but also to her fellow Starrett City residents and to the corporation Starrett City and its police officers. Annette Brown challenged Starrett City's private police use of handcuffs against her, and the jury agreed with Annette Brown that Sergeant Newman had violated her constitutional rights and that Starrett City was liable for her injuries. Unlike a civil rights action against police officers employed by a large municipality where an aggrieved citizen may never see the offending officers again, Starrett City is a relatively small community that has set geographical boundaries, a set number of buildings and residents and a small private police force.

Annette Brown stood to challenge the order of things, and she did so with the obvious risk of reprisal in order to vindicate her rights secured under the Fourth Amendment of the United States Constitution against unreasonable search and seizure. The results of this lawsuit will have made a positive statement to Starrett City on behalf of its residents that the protections granted by the Constitution of the United States apply with equal force inside the boundaries of Starrett City, and that the officer of Starrett City cannot act with impunity.

The second unique feature of this lawsuit was the defense raised by defendants which the jury rejected as incredible. Defendants took the false positions that Sergeant Newman was not responsible for handcuffing Annette Brown, but that a female officer handcuffed Ms. Brown. Defendants asserted that Annette Brown charged the female officer, Joanne Phillips, and tried to pry another citizen who was being held and in custody, away from Phillips. Defendants claimed that Annette Brown was arrested for disorderly conduct when she failed to abide by Newman's order that she let go of the person in custody.

Defendants denied, in court sworn testimony, that Annette Brown requested medical aid, and that she in fact denied treatment. Defendants denied in the police reports and in sworn testimony, that Annette Brown had any visible injury to her wrists. Defendants denied that Annette Brown complained about her right wrist and stated in documents and testimony that she only complained about her left wrist. These denials were made in the face of the Emergency Medical Services ambulance report from the night of Annette Brown's arrest that stated EMS personnel observed bi-lateral swelling on her wrists, and transported her by ambulance to Kings County Medical Center from the Starrett City police headquarters after being released from handcuffs.

Defendants also made new and unsupported allegations that Annette Brown had charged at officer Phillips with the intent to free another citizen who was alleged to have been in Phillips' custody. This was an obvious fabrication that was contradicted by Starrett City's own arrest documents and memo-books, was a bad faith attempt to further justify their actions

Defendants took the position that nothing Annette Brown said was true. The only way that Annette Brown could prevail at trial was to disprove the several false positions taken by the defendants. The jury's verdict that Newman injured Annette Brown by using unnecessary force

against her, vindicated Annette Brown. She had to disprove the official police reports and the official false testimony given by three Starrett City police officers at trial, in order to prove that Sergeant Newman had violated her Fourth Amendment Rights.

Annette Brown's false arrest claim was an even more difficult claim to prove than the excessive force claim, and was really an ancillary claim to the excessive force claim in many ways, and Judge Weinstein agreed. The particular difficulty with the false arrest claim was that Annette Brown openly admitted that she touched the shirt of a person in police custody, which act in and of itself could easily rise to probable cause to arrest her pursuant to New York Penal Law § 195.05 for Obstruction of Governmental Administration. Her custody following the arrest was only for two hours or less. Though the defendants did not charge Annette Brown with Obstruction of Governmental Administration, nor did they raise this argument at Summary Judgment, plaintiff's counsel did bring it to the Court's attention for purposes of summary judgment, and Judge Weinstein charged the jury if they found the reasonable officer would have had probable cause to arrest on O.G.A., the arrest would have been lawful.

Judge Weinstein determined at the conclusion of the trial that plaintiff was entitled to a reasonable attorney fee pursuant to § 1988, denied the defendants' objection to the fee, denied the defendants' application for their own fee under § 1988, and instructed the plaintiff to submit all hours and litigation expenses to the court to consider the amount of the fee. In granting that a an attorney's fee be provided, Judge Weinstein stated: "The benefit to the plaintiff was quite substantial from this trial, the main issue, in any event, clearly from the beginning was excessive force. It was clear from the beginning that the false arrest claim was not even pressed strongly and was not relied upon strongly, and it was excessive force that is the main issue in the case." (Exhibit 8, at p. 29:19-25.)

4

### III. DEFENDANTS' OPPOSITION

Defendants argue that the jury award was "nominal" and that pursuant to *Farrar v. Hobby*, 506 U.S.103 (1992), plaintiff is entitled to zero attorney's fees. In addition defendants argue that there was no public interest in the verdict, which they claim was "insignificant and no public purpose was achieved in this litigation." (*See* Deft. Opp. At p. 6.) Defendants go so far as to argue that "the same jury found that the defendants did not violate the plaintiff's constitutional rights."[1] (*Id.* at p. 2.)

Defendants do not object to the expenses under §1988,[2] do not object to counsel's hourly rate. Though the defendants take the general position that the total fee request of $73,350 is "unreasonable and excessive considering the time and labor required to prosecute this case, which should have been minimal," but do not specify an objection to any particular hours spent.

Defendants also take the misguided position that plaintiff should be bound by the contingent retainer agreement between Annette Brown and counsel. This argument, however, must be rejected out of hand, as the Supreme Court decided more than twenty years ago that the statutory attorney's fees under 42 U.S.C. § 1988 coexists with other attorney's fees made available by agreement between the plaintiff and her attorney. *See, Venegas v Mitchell*, 495 US 82, 87-88, (1990) ("Section 1988 makes the prevailing *party* eligible for a discretionary award of attorney's fees. Because it is the party, rather than the lawyer, who is so eligible, we have consistently maintained that fees may be awarded under § 1988 even to those plaintiffs who did

---

[1] This may be the root of the problem for Starrett City Associates and Sergeant Newman, that they do not recognize that a finding that Newman used excessive force is a finding that he violated Annette Brown's rights guaranteed under the Fourth Amendment against unreasonable seizure. Perhaps Annette Brown's verdict will succeed in exposing their ignorance, and will lead to more constitutional police practice.

[2] Though Judge Weinstein granted attorneys fees under § 1988 and directed plaintiff to submit time records, retainer and bills for litigation expenses, he also denied plaintiff's disbursements. Reading these together, it seems that the Court has denied plaintiff disbursements under 28 U.S.C §1920, but allows reasonable fees and expenses under § 1988.

not need them to maintain their litigation, either because they were fortunate enough to be able to retain counsel on a fee-paying basis, or because they were represented free of charge by nonprofit legal aid organizations. We have therefore accepted, at least implicitly, that statutory awards of fees can coexist with private fee arrangements. And just as we have recognized that it is the party's entitlement to receive the fees in the appropriate case, so have we recognized that as far as § 1988 is concerned, it is the party's right to waive, settle, or negotiate that eligibility." (Internal citations omitted.))

Defendants also argue that their conduct was not frivolous in pursuing several actions during litigation, including two motions for summary judgment in the face of clear material issues of fact, and late attempts during trial to have a medical expert testify, despite waiving their rights under Rule 26 (b)(2), and then withdrawing their application at trial once plaintiff brought a written motion to deny the medical witness that set forth the history of defendants' conduct. Defendants do not address their use of fabricated factual positions that were rejected by the jury in the context of frivolous litigation under § 1927.

### III. REPLY

1. <u>Plaintiff's Award was Not Nominal</u>.

Plaintiff's award was not nominal as that term has come to mean a symbolic award of one dollar in place of actual compensation. *See, e.g., Sigal v. Moses*, 2010 WL 653493, 98 Civ. 3940 (TPG) (S.D.N.Y. 2010); *Anderson v. City of New York*, 132 F.Supp.2d 239 (2001). In this case, the jury awarded Annette Brown compensation for what they believed was a either a lesser, or unproven, physical injury. Neither is the amount demonstrative of the constitutional injury, nor did it demonstrate the jury's opinion as to punitive damages against the defendants for their false

6

and evasive testimony at trial, or their acts in trying to cover up their wrongful acts against Annette Brown.

Plaintiff did not ask the jury for anything more than to put her in the position that she would have been and to do what is "right" and "fair." No dollar amount was put before the jury, nor was the jury provided with a copy of the pleadings to consider the *ad damnum*. The jury was also not charged to consider punitive damages, which was over the plaintiff's objection. And plaintiff maintains that the jury should have been able to consider punitive damages in this situation, of reckless or careless disregard or indifference to Annette Brown's constitutional rights. *See, e.g., Smith v. Wade*, 461 U.S. 30 (1983); see also, *Anderson v. City of New York*, 132 F.Supp.2d 239, 242 (S.D.N.Y. 2001) ("[D]efendants contend that the award of $2,501 in this case is a mere technical victory when considered in light of a prayer for relief in the plaintiffs' complaint totaling $66,000,000. However, regardless of the amount sought in the prayer for relief in the complaint, plaintiffs never asked the jury to award a specific amount at trial and the jury was never given a copy of the complaint. *Cf, Adams v. Rivera*, 13 F.Supp.2d 550, 553 n.5 (S.D.N.Y. 1998); *Pino*, 1010 F.3d at 237."

During deliberations the jury sent out several notes, one of which requested guidance on the range of damages allowed. This was followed by another note asking what would happen if there was deadlock amongst the juries.

    2.    Brown's Verdict Serves Public Interest and
<u>Vindicates Significant Personal Right Under the Fourth Amendment.</u>

Congress' purpose in enacting the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 was to encourage private attorneys to serve to enforce § 1983 actions. "All of these civil rights laws depend heavily upon private enforcement and fee awards have proved an

7

essential remedy if private citizens are to have meaningful opportunity to vindicate the important Congressional policies which these laws contain. . . . If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." Senate Report No. 94-1011, 84 Cong. 2nd Sess. 6 (1976). "In enacting § 1988, Congress rejected the traditional assumption that private choices whether to litigate, compromise, or forgo a potential claim will yield a socially desirable level of enforcement as far as the enumerated civil rights statutes are concerned." *Hensley v Eckerhart*, 461 US 424, 444 (1983).

In resolving disputes of § 1988 attorney's fees, the federal courts have generally recognized that prevailing parties on excessive force claims have provided a public benefit. "Even a modest award of damages in an excessive force case against police officers confers an 'overall benefit to society,' because 'an individual damage action to redress instances of police misconduct is often the only tool reasonably available to vindicate society's interest in ensuring that those who enforce the law also abide by it.' *Milwe v. Vauoto*, 653 F.2d 80, 84 (2d Cir. 1981)." *Anderson v. City of New York*, 132 F.Supp.2d 239, 242-43 (S.D.N.Y. 2001).

3.  <u>Brown Should be Awarded Attorney's Fees Under § 1988 Under Lodestar.</u>

Annette Brown achieved success in her claims against Sergeant Newman and Starrett City Associates, and Judge Weinstein ordered that she be entitled to reasonable attorney's fees under § 1988. Using the lodestar analysis, plaintiff is entitled to $73,350.00. This amount reflects, in many ways, hours that would not have been necessary in other

8

litigations of this kind due to the conduct of the defendants.[3] In determining the fee amount, the Second Circuit has "consistently [ ] resisted a strict proportionality requirement in civil rights cases. *Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 525-28 (2d Cir.1991). Moreover, the determination of whether such a lodestar adjustment need be made is left largely to the discretion of the trial court. *Grant,* 973 F.2d at 101." *Lunday v City of Albany*, 42 F3d 131, 134-35 (2d Cir 1994).

4. An Additional Amount for Expenses and Attorney's Fees Should be Granted as Part of this Fee Application.

Plaintiff respectfully requests the opportunity to submit a final accounting all hours spent in preparing this application, and all expenses associated. As of today the total amount of hours spent is 31.20 at the rate of $300/hour coming to $9,360.00. The expenses involved in assembling this fee application, including binding of hard copies of the memoranda and court reporting fees for proceedings on July 7 and July 8, 2011, are $790.31, for a total, as of today's date, of an additional $10,150.31. See below:

| Date | Matter | Hours | Fee |
| --- | --- | --- | --- |
| 07/20/11 | Westlaw Rsch: Farrar/Coe/Kassim/etc | 2.70 | $810.00 |
| 07/21/11 | Draft Memo re Points on fee application | 0.40 | $120.00 |
| 07/28/11 | Letter to Hon RLM w enclosures | 0.20 | $60.00 |
| 07/31/11 | Westlaw Rsch: sheppardize cases w review and notes | 1.80 | $540.00 |
| 08/03/11 | Review Section 1988 Cases & Notes | 2.80 | $840.00 |

---

[3] Even in defendants' opposition, they continue to make false or misleading statements for the sole purpose of defeating the plaintiff. For instance, plaintiff did not make a "$75,000 demand at trial to settle this matter" (Opp at p. 6); the plaintiff's medical expert Dr. Pae, did in fact state there was causation of the injury within a reasonable degree of medical certainty. (See Opp. At p. 5)

9

| | | | |
|---|---|---|---|
| 08/11/11 | Draft Memo - Facts, Summary etc | 2.20 | $660.00 |
| 08/14/11 | Research Farrar US/nat Cases & NY Feds - draft outline | 3.20 | $960.00 |
| 08/15/11 | Finalize Outline - Draft Memo - Draft Decl - Assemble - Finalizee | 5.30 | $1,590.00 |
| 09/15/11 | Review Opposotion Memo & Notes | 0.90 | $270.00 |
| 09/15/11 | Rev Deft Opp & Notes & Outline | 1.60 | $480.00 |
| 09/19/11 | Draft Reply Outline & Research Issues Raised in Opp Brief | 1.30 | $390.00 |
| 09/20/11 | Initial Drafting of Reply Brief | 5.60 | $1,680.00 |
| 09/21/11 | Finalize Reply & File | 3.20 | $960.00 |
| | **Post Fee** | **31.20** | **$9,360.00** |
| | Reporting Fees Transcript of Proceedings July 8 | | $80.04 |
| | Reporting Fees Transcript of Proceedings July 7 | | $671.34 |
| | Binding Kinkos | | $38.93 |
| | **TOTALS** | | **$10,150.31** |

Though the defendants were ordered by Judge Weinstein to negotiate in good faith, they have refused to do so and taken the untenable position that they should not have to pay any attorney's fees. The additional fees incurred by this application are a direct result of the defendants' actions.

5.  Plaintiff is Alternatively Entitled to Fees Under 28 U.S.C. § 1927

Defendants' conduct in using deliberate fabrication to defend against a civil rights claim, and then to use abusive motion practice, is frivolous, intentional and sanctionable. Defendants do not even argue in their opposition that they did not act in bad faith – which is the touchstone of § 1927. *See, Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986). Defendants conduct during

discovery, motion practice and during trial, was frivolous and entitles the plaintiff to attorney's fees under § 1927 as an alternative to § 1988.

## V. CONCLUSION

Plaintiff respectfully requests that this Honorable Court grant plaintiff's motion for fees in the amount of $82,710, with disbursements under § 1988 in the amount of $11,198.24, and to grant any and all additional relief that this Honorable Court deems necessary and proper.

Respectfully Submitted,

_____
Michael P. Mangan (MM-5773)
Attorneys for Plaintiff
160 Pearl Street, Suite 610
New York, New York 10005
(212) 248-2171

11