UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANNETTE BROWN,

                         Plaintiff,                                MEMORANDUM
                                                              AND ORDER

                  -against-                                09-CV-3282 (JBW)

STARRETT CITY ASSOCIATES, et al.,

                            Defendants.
------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

        Following a four-day jury trial before the Honorable Jack B. Weinstein, plaintiff

Annette Brown ("plaintiff") moved for attorney's fees and expenses pursuant to 42 U.S.C. §

1988 ("section 1988"). See Trial Transcript ("Trial Tr.") (July 8, 2011) at 29-30, Electronic

Case Filing Docket Entry ("D.E.") #82-10. At trial, plaintiff sought to prove that Starrett City

Associates and Officer Rupert Newman (collectively, "defendants") violated her federal

constitutional rights and New York state law when they arrested her near her residential

housing complex. See Memorandum (July 13, 2011) ("7/13/11 M&O") at 1-2, D.E. #74. At

the conclusion of trial, the jury found against plaintiff on her false arrest claim. See id. at 4.

The jury did find, however, that defendants had used excessive force in handcuffing plaintiff,

who suffered from preexisting carpal tunnel syndrome, and awarded plaintiff $500 in

compensatory damages. See id. Subsequently, Judge Weinstein ruled that plaintiff was

entitled to attorney's fees under section 1988 and referred the issue of the amount of fees to the

undersigned magistrate judge. See Order (July 14, 2011), D.E. #75.

        On August 15, 2011, plaintiff filed a fee application seeking $73,350 in fees and

$10,407.93 in disbursements pursuant to section 1988.  See Memorandum of Law in Support of Plaintiff's Application for Attorney's Fees (Aug. 15, 2011) ("Pl. Mem.") at 13, D.E. #81.  Alternatively, plaintiff sought to recoup legal fees under 28 U.S.C. § 1927 ("section 1927").  See id.

Defendants objected to plaintiff's request on numerous grounds.  See Memorandum of Law in Opposition to Plaintiff's Application for Attorney's Fees (Sept. 14, 2011) ("Def. Opp."), D.E. # 83.  First, defendants claimed that plaintiff's victory was "de minimus" and argued that because the jury only awarded her "nominal" damages, she was not entitled to $73,350 in fees; defendants did not otherwise address the reasonableness of the hourly rate requested or number of hours expended.  See id. at 3-6.  Second, defendants asserted that plaintiff's recovery of fees should be limited to one-third of the damages awarded, as per the retainer agreement with her attorney.  See id. at 6-7.  Finally, defendants contended that because their defense was not frivolous, fees under section 1927 were not justified.  See id. at 8-9.

Thereafter, plaintiff filed a reply in which she amended the amount of fees and disbursements to $82,710 and $11,198.24, respectively, to reflect the work performed in preparing the fee application.  See Reply Memorandum in Further Support of Plaintiff's Application for Attorney's Fees (Sept. 21, 2011) ("Pl. Reply"), D.E. # 84.

For the reasons set forth below, the Court grants plaintiff's motion in part and denies it in part.

## BACKGROUND

### I.      The Complaint

Defendant Starrett City Associates ("Starrett City") is a private corporation that operates a private security force that has been deputized by the New York City Police Department and whose officers have the power to make arrests.  See 7/13/11 M&O at 1. Defendant Rupert Newman ("Newman") was employed by Starrett City as a security officer when he arrested plaintiff on July 30, 2008.  See id.

On July 27, 2009, plaintiff filed a complaint alleging that defendants (as well as various John Doe officers) violated 42 U.S.C. § 1983 ("section 1983") and New York state law by falsely arresting plaintiff and by using excessive force in executing the allegedly wrongful arrest.  See Complaint ("Compl."), D.E. #1.  In addition, the Complaint included a malicious prosecution claim and a claim against Starrett City for negligent hiring and supervision of its officers.  See Compl. ¶¶ 42-46.

### II.     Summary Judgment

Following the completion of discovery, defendants moved for summary judgment on all claims in February 2011.  See Defendants' Motion for Summary Judgment (Feb. 28, 2011), D.E. #34.  In support of their motion, defendants argued that "no genuine issues of material fact exist."  Id. at 1.

On March 10, 2011, plaintiff wrote to defendants pursuant to Rule 11 of the Federal Rules of Civil Procedure.  See Letter by Michael P. Mangan, D.E. #82-4, Exhibit 3 to Declaration of Michael P. Mangan (Aug. 15, 2011) ("Mangan Decl."), D.E. #82.  Plaintiff

demanded that defendants withdraw their February 28, 2011 motion for summary judgment, on

the ground that defendants' Rule 56.1 Statement of Material Facts improperly ignored the

deposition testimony of plaintiff contradicting defendants' version of the encounter on July 30,

2008.  See id.  A few days later, on March 15, 2011, defendants wrote to Judge Weinstein

requesting permission to re-file their motion for summary judgment.  See Letter from Joshua

D. Lindy (March 15, 2011), D.E. #35.  Defendants explained that plaintiff's March 10, 2011

letter had led them to realize that they had inadvertently filed a draft summary judgment

motion.  See id.  That same day, defendants re-filed their motion for summary judgment.  See

Amended Motion for Summary Judgment (March 15, 2011), D.E. # 36.  Shortly thereafter,

plaintiff withdrew her claims of malicious prosecution and negligent hiring and supervision.

See Memorandum and Order (May 13, 2011) ("5/13/11 M&O") at 1, D.E. #52.  Plaintiff also

withdrew all claims against the John Doe police officers.  See id.

Ultimately, Judge Weinstein granted in part and denied in part defendants' motion for

summary judgment.  See 5/13/11 M&O at 1.  Specifically, Judge Weinstein found that genuine

issues of material fact precluded summary judgment on all but one of the remaining claims.

See id. (dismissing claim for corporate liability against Starrett City under section 1983).[1]

## III.    The Trial

On July 5, 2011, a jury trial commenced before Judge Weinstein.  See Minute Entry

---

[1]  Although Judge Weinstein dismissed the section 1983 claims against Starrett City,
defendants treat Starrett City's liability for fees as coextensive with Newman's.  See generally
Def. Opp.  As Newman presumably is being indemnified by Starrett City, this Court likewise
will not distinguish between the two defendants in assessing their liability for fees.

(July 5, 2011), D.E. #65.  Over the course of four days, the jury heard testimony from

plaintiff and her treating physician regarding plaintiff's wrist injury.  See Pl. Mem. at 7-8.

The jury also heard testimony from the arresting officers.[2]  See id. at 9-10.  Because the claims

being tried shared common elements, Judge Weinstein instructed the jury solely as to the (1)

false arrest and (2) excessive force claims under section 1983.  See 7/13/11 M&O at 2 (noting

that the New York state law claims were essentially the same as plaintiff's section 1983

claims).  Judge Weinstein charged the jurors that if they found that plaintiff suffered "no

physical, emotional or financial injury" as a result of defendants' conduct, they could "award

her one dollar as nominal damages for that violation."  Trial Tr. at 16.  He further instructed

the jurors that they could "not award both nominal and compensatory damages for the violation

of a right."  Id.  He specifically explained that "[e]ither the plaintiff was injured due to the

violation of her right, in which case you must award compensatory damages or she was not, in

which case you may award nominal damages."  Id.

      After four days of trial, the jury returned its verdict.  See Trial Tr. at 25.  The jury

found in favor of defendants on the wrongful arrest claim but in favor of plaintiff on her

excessive force claim.  See id.  The jury awarded plaintiff $500 in compensatory damages.[3]

See id.  Following the verdict, Judge Weinstein held that plaintiff was entitled to attorney's

_____

[2]  Notably, Judge Weinstein informed defendants' counsel that he believed Officer Joanne
Phillips – one of the arresting officers – "lied throughout" and that he "was appalled" by her
testimony.  See Trial Tr. at 21.

[3]  As Judge Weinstein declined to instruct the jury on punitive damages, that issue was not
before the jury.  See Trial Tr. at 5.

fees under section 1988.  See id. at 29.  In doing so, Judge Weinstein rejected defendants'

argument that no attorney's fees were warranted because plaintiff prevailed on only one of her

claims.  See id. ("It was clear from the beginning that the false arrest claim was not pressed

strongly, was not relied upon strongly, and it was the excessive force that is the main issue in

this case.").  However, in recognition of plaintiff's partial success, upon entry of judgment,

Judge Weinstein disallowed costs and disbursements under 28 U.S.C. § 1920 ("section 1920").

See Order (July 14, 2011), D.E. # 75; Order (Oct. 3, 2011) ("10/3/11 Order"), D.E. #87.

## DISCUSSION

### I.   Attorney's Fees and Disbursements Pursuant to Section 1988

As a general rule, each party bears his or her own litigation expenses, including

attorney's fees.  See Fox v. Vice, __ U.S. __, 131 S. Ct. 2205, 2213 (2011).  However,

Congress has authorized certain exceptions to this so-called "American Rule" in the form of

fee-shifting statutes.  See id.  One such statute – 42 U.S.C. § 1988(b) – allows "a prevailing

party" to recover "a reasonable attorney's fee" in a suit brought to enforce the section 1983

civil rights statute.  See Fox, __ U.S. at __, 131 S. Ct. at 2213; Haley v. Pataki, 106 F.3d

478, 482-83 (2d Cir. 1997).

### A.   Plaintiff as "Prevailing Party" is Entitled to Reasonable Fees and Expenses

Defendants oppose the award of any fees to plaintiff on the basis that the jury awarded

her only a "nominal amount" and, as such, her victory is a mere technicality.  See Def. Opp.

at 6.  As an initial matter, in raising this argument in opposition, defendants ignore Judge

Weinstein's earlier ruling that plaintiff is entitled to recover fees.  See Trial Tr. at 29

-6-

(overruling defendants' objections and stating that "attorney[']s fees are permitted"); 7/13/11 M&O at 4 (amount of fees to be determined by magistrate).

Even if Judge Weinstein had not specifically held that plaintiff is entitled to fees, defendants' argument would nevertheless fail.   First, despite defendants' claim to the contrary, plaintiff did not receive nominal damages.  Judge Weinstein specifically charged the jurors that if they returned a verdict in plaintiff's favor, they should award plaintiff either one dollar in nominal damages or a reasonable amount of compensatory damages.  See Trial Tr. at 16.  The jury returned a verdict of $500 in compensatory damages.[4]  See id. at 25.  That the compensatory damages awarded by the jury may have been modest does not automatically render them "nominal" or "de minimus."  See Millea v. Metro-North R.R. Co., __ F.3d __, 2011 WL 3437513, at *9 (2d Cir. Aug. 8, 2011) ("The district court conflated a small damages award with a de minimus victory."); Morris v. Eversley, 343 F.Supp.2d 234, 248 (S.D.N.Y. 2004) (Chin, J.) (although jury awarded plaintiff only $1,000 in compensatory damages for Eighth Amendment violation, "notwithstanding the amounts of the damages awarded, Morris and the Milbank lawyers still obtained a significant victory, one that undoubtedly will help to protect the civil rights of others'"); Anderson v. City of New York, 132 F.Supp.2d 239, 242-43 (S.D.N.Y. 2001) (recovery of $2,500 in compensatory damages

---

[4]  Defendants confusingly state in their opposing papers that plaintiff's application for fees "neglects to mention that the [] jury found that the defendants did not violate the plaintiff's constitutional rights."  Def. Opp. at 2 (emphasis added).  While plaintiff concedes that the jury found against plaintiff as to the false arrest claim, see Pl. Mem. at 10, the jury clearly did find that plaintiff's constitutional right against the use of excessive force had been violated.  See Trial Tr. at 25.

on excessive force claim was not technical or de minimus, even though complaint sought $66 million). Indeed, "[section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was *too small, in terms of expected monetary recovery*, to create an incentive for attorneys to take the case under conventional fee arrangements." Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) (emphasis added).

Equally unavailing is defendants' argument that plaintiff's success on her excessive force claim does not serve any public purpose. See Anderson, 132 F.Supp.2d at 242-43 ("Even a modest award of damages in an excessive force case against police officers confers an 'overall benefit to society,' because 'an individual damage action to redress instances of police misconduct is often the only tool reasonably available to vindicate society's interest in ensuring that those who enforce the law also abide by it.'") (citations omitted); cf. Millea, __ F.3d at __, 2011 WL 3437513, at *9 (holding that enactment of fee-shifting provision in Family Medical Leave Act reflects congressional determination that "FMLA claims serve an important public purpose disproportionate to their cash value").

For the reasons above, plaintiff is a "prevailing party" within the meaning of 42 U.S.C. § 1988 and is entitled to recover reasonable attorney's fees and expenses.

**B. Plaintiff's Presumptively Reasonable Fee**

In determining the sum due to plaintiff in fees and costs, "the Court looks to what a reasonable client would be willing to pay to determine the 'presumptively reasonable fee.'" Masino v. Columbus Constr. Corp., No. 08–CV–1592 (RRM)(CLP), 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009) (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v.

County of Albany, 522 F.3d 182, 183–84 (2d Cir. 2008)).[5]  "To calculate the presumptively

reasonable fee, a court must determine a reasonable hourly rate for the legal services

performed[,]" using factors such as the labor and skill required, the difficulty of the questions,

the attorney's customary hourly rate, the amount at stake and awards in similar cases.  Id. at

*6–7 (quoting Arbor Hill, 522 F.3d at 187 n.3 (listing twelve factors)).

        In deciding the reasonable hourly rate, courts may also consider the degree of success

obtained by the prevailing party.  See Kassim, 415 F.3d at 256.  Although the success of a

party in pursuing his or her claims, and the quality of the attorney's performance, are relevant

to the determination of a reasonable hourly rate, the case law is clear that a court may not

reduce an attorney's fee award simply because the fee award would be disproportionate to the

damages in the underlying case.  See Millea, ___ F.3d  at ____, 2011 WL 3437513, at *10

(holding that it was legal error for district court to calculate fee award as a proportion of

plaintiff's damages); Kassim, 415 F.3d at 252 ("[W]e have repeatedly rejected the notion that a

fee may be reduced merely because the fee would be disproportionate to the financial interest

at stake . . . .") (citations omitted); Starkey v. Somers Cent. Sch. Dist., No. 02 Civ 2455,

2008 WL 5378123, at *6 (S.D.N.Y. Dec. 23, 2008) (Lynch, J.) (declining to further reduce

---

[5]  The Second Circuit in Arbor Hill called for abandoning the term "lodestar" in favor of the
"presumptively reasonable fee."  See Arbor Hill, 522 F.3d at 190.  In 2010, in Perdue v.
Kenny A., the Supreme Court issued an opinion endorsing the lodestar method.  See ___ U.S.
___, ___,130 S. Ct 1662, 1673 (2010).  Whatever the terminology, both Arbor Hill and Kenny
A. require the Court to consider case-specific factors in determining the reasonableness of the
hourly rates and the number of hours expended.  See generally Shim v. Millennium Grp., 08-
CV-4022 (FB)(VVP), 2010 WL 2772493, at *2 & n.3 (E.D.N.Y. June 21, 2010) (analyzing
Arbor Hill in light of Kenny A. opinion).

fee award based solely on the disproportion between the amount of the recovery and the fees charged); Luessenhop v. Clinton Co., 558 F.Supp.2d 247, 256 (N.D.N.Y. 2008) ("[I]t would be inappropriate for us to consider reducing the size of the award because the damages and the relief recovered were modest."); Knoeffler v. Town of Mamakating, 126 F.Supp.2d 305, 319 (S.D.N.Y. 2000) ("A rule of proportionality would contravene the intent of Congress, because it would deny civil rights plaintiffs, with potentially small damages, full redress in the courts.") (citation omitted).

Once the Court determines the reasonable hourly rate, it must then multiply this rate by the reasonable number of hours expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. In any event, "[a] fee award should be based on a scrutiny of the unique circumstances of each case . . . ." McDaniel v. County of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (internal quotation omitted).

### i. Reasonable Hourly Rate

To determine the reasonable hourly rate, the court must take into account all of the case-specific variables. See Arbor Hill, 522 F.3d at 189-90. Here, plaintiff's counsel has been practicing law for twelve years and, in the past seven years, has developed a concentration in civil rights actions. See Mangan Decl. ¶¶ 3-6. With respect to the difficulty of the instant litigation, although false arrest and excessive force claims typically do not entail novel legal issues, this case did raise at least one unusual issue concerning the vicarious

liability of private entities whose employees violate the United States Constitution.[6]  See

7/13/11 M&O at 1.  In terms of plaintiff's success, while her counsel was ultimately able to

establish that her rights had been violated in one respect, plaintiff did have to withdraw several

claims prior to a decision on summary judgment, was unsuccessful at trial on the false arrest

claim, and was awarded only modest damages.  Nevertheless, while the degree of success may

be considered in assessing the reasonableness of a fee request, see Kassim, 415 F.3d at 253-56,

"[a]bsent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only

relevant to fee award calculations when they are a direct result of the quality of the attorney's

performance."  Millea, __ F.3d at __, 2011 WL 3437513, at *9.  No suggestion has been or

indeed could be made that the representation afforded by plaintiff's counsel was in any way

substandard.  Indeed, at the conclusion of trial, Judge Weinstein stated on the record that

plaintiff's counsel was "an excellent attorney."  Trial Tr. at 18.

  Here, plaintiff's counsel asserts that his current hourly rate – $300 – is a reasonable

hourly rate.  See Pl. Mem. at 12; Mangan Decl. ¶ 10.  Although plaintiff's office is located in

the Southern District of New York, this Court must consider the prevailing rates for attorneys

in this district.  See Simmons v. New York City Transit Auth., 575 F.3d 170, 175-76 (2d Cir.

2009) (Eastern District courts must consider rates of attorneys in that district, unless prevailing

party can overcome forum rule presumption).  Courts in the Eastern District have often

---

[6]  Plaintiff posits that this case was particularly difficult because plaintiff had to disprove
defendants' "false" version of the events.  See Pl. Reply at 3-4. This circumstance does not
distinguish the case from most section 1983 actions, which usually involve competing versions
of police encounters.

awarded hourly rates in excess of $300 for experienced attorneys in civil rights actions.  See

Wong v. Yoo, No. 04-CV-4569 (JBW)(ALC), 2010 WL 4137532, at *2 (E.D.N.Y. Oct. 19,

2010) (awarding $375 to solo practitioner in civil rights case); Cruz v. Henry Modell & Co.,

No. 05-CV-1450(AKT), 2008 WL 905351, at *10 (E.D.N.Y. March 31, 2008) (concluding

that $325 an hour was in line with the prevailing market rate in the Eastern District of New

York).[7]

Given the specific circumstances of this case, including, but not limited to, counsel's

experience, the complexity of the case and the degree of success, the Court finds that $300 is a

reasonable hourly rate, and one that has not been contested or even addressed by defendants.

### ii. Reasonable Number of Hours

Defendants also oppose plaintiff's application because it "is based on hours spent for

preparing this litigation as a whole, not just the one claim proved at trial."[8]  Def. Opp. at 6.

Under section 1988, a court may award fees for the hours spent on any unsuccessful

---

[7]  Defendants do not argue that Mr. Mangan's hourly rate should be reduced with respect to
those tasks (such as legal research and drafting) that do not require the skills of a partner-level
attorney.  Michael P. Mangan apparently is either a solo practitioner or the principal of a very
small law firm.  "It is inevitable in smaller law firms that more experienced attorneys must
complete work that would be completed by a junior associate at a larger firm," and, in such
circumstances, the hourly rate of an experienced attorney need not be reduced "simply because
he performed legal research that could have been completed by a junior associate at a larger
firm."  Serin v. Northern Leasing Sys., Inc., No. 7:06-CV-1625, 2011 WL 1467560, at *11
(S.D.N.Y. Apr. 19, 2011).  This Court will, however, disallow recovery for tasks performed
by persons as to whom no information has been provided.  See infra p. 13.

[8]  This assertion is slightly inaccurate, in that it fails to take into account that Judge Weinstein
merged plaintiff's state law assault and battery claim with the section 1983 excessive force
claim.  Thus, plaintiff technically prevailed on two claims.

claims that are "inextricably intertwined and involve a common core of facts" with the

successful claims. See Anderson, 132 F.Supp.2d at 244 (internal quotation and citations

omitted). Here, there is undoubtedly a common core of facts, as all claims arose out of the

same incident -- namely, plaintiff's arrest on July 30, 2008. Cf. Baim v. Notto, 316

F.Supp.2d 113, 121 (N.D.N.Y. 2003) (declining to find excessive force claims intertwined

where they arose out of separate incidents at two different locations). In this case, the

excessive force and false arrest claims arose during a single encounter and are so intertwined

that division of counsel's hours between the claims would be particularly difficult. See Le-

Blanc-Sternberg v. Fletcher, 143 F.3d 748, 762 (2d Cir. 1998).

    Turning to the hours plaintiff's counsel seeks to recover, they are not, for the most

part, unreasonable. See Time Records, D.E. #88-1 at 2-31 (sealed), attached to Letter from

Michael P. Mangan (July 28, 2011), D.E. #88. However, 11.2 of the hours listed by plaintiff

were completed by someone other than attorney of record, Michael Mangan. See id. at 3

(e.g., entries for 3/5/10). Most of these hours are attributed to "JG", who, from other

documents in the record, appears to be Jonathan Ginsberg. No information about Mr.

Ginsberg is provided in the application: there is no discussion of his experience, typical hourly

rate, or even his connection to the Law Offices of Michael P. Mangan LLC. Similarly,

plaintiff seeks compensation for hours attributed to an unidentified "GB", who apparently

attended plaintiff's deposition. See id. at 4 (4/6/10 entry). As plaintiff has not sustained her

burden with respect to these billings, the Court will disallow 11.2 of the hours claimed. See

Bogosian v. All Am. Concessions, 06-CV-1633 (RRM)(RML), 2011 WL 4460362, at *10

n.11 (E.D.N.Y. Sept. 26, 2011) (party seeking fees bears burden of submitting sufficient evidence to justify rates and hours claimed).

In addition, plaintiff has requested $9,360.00 in fees for work performed in connection with the pending fee application.  See Pl. Reply at 10.  While it is undisputed that a prevailing party may recover for hours expended in connection with a fee request, see Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999), the amount requested by plaintiff appears excessive under the circumstances of this case.  See, e.g., Murray ex rel. Murray v. Mills, 354 F.Supp.2d 231, 241 (E.D.N.Y. 2005) (reducing fee-application hours from 150 to 15, and  noting that courts in the Eastern District have awarded 5 to 15 hours for fee applications in routine cases).  For example, plaintiff's counsel logged almost twelve hours -- at $300 per hour -- for legal research and nearly seventeen hours (also at $300 per hour) for drafting his court submissions. In order to reflect a more reasonable number of hours by an experienced attorney (who presumably has handled other fee applications and need not research basic issues of law), the Court will disallow 7.0 hours of attorney time in connection with the fee application.

Multiplying the remaining hours logged (268.70) by the $300 hourly rate, the presumptively reasonable fee is $80,610.00.

**C. Reasonable Expenses**

In a civil rights action, there are two types of costs that a prevailing party generally may recover.  First, he or she may recover the limited enumerated taxable costs set forth in 28 U.S.C. § 1920.  See Robinson v. City of New York, No. 05 Civ. 9545(GEL), 2009 WL 3109846, at *10 (S.D.N.Y. Sept. 29, 2009) (Lynch, J.).  In addition to section 1920 costs, a

successful civil rights plaintiff may recover "additional expenses ordinarily charged in the particular legal marketplace." Id. Here, Judge Weinstein has specifically directed that plaintiff is not to receive any section 1920 costs. See 10/3/11 Order.

Plaintiff seeks $11,198.24 in expenses pursuant to 42 U.S.C. § 1988, including $790.31 incurred in making instant fee application. See Pl. Reply at 10. Plaintiff provides no supporting documentation for the $790.31 in expenses "involved in assembling this fee application," id. at 9, despite this Court's July 12, 2011 order that "disbursement records" be submitted. See Order (July 12, 2011), D.E. #71. Therefore, the Court declines to award these expenses. Cf. Levy v. Powell, No. CV-00-4499(SJF), 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005) (awarding prevailing party in Title VII case only those expenses that had been documented). The Court also declines to award the $66.54 in expenses incurred by Jonathan Ginsberg, for the reasons previously stated. See supra p. 13. In addition, overhead costs such as the $22.18 spent on exhibit tabs are not allowed. See Robinson, 2009 WL 3109846, at *11 (exhibit binders and tabs part of firm overhead and not recompensable).

More troubling than the above, however, plaintiff seeks reimbursements for expenses that are considered section 1920 taxable costs, which, as plaintiff notes, Judge Weinstein has disallowed. See Pl. Reply at 5 n.2; 10/3/11 Order. For instance, plaintiff seeks reimbursement for the $350 filing fee, as well as $280.00 in statutory witness fees. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440-41 (1987) (statutory witness fee part of section 1920 taxable costs); O.T.S. Logistics, Inc. v. Maestri Pastai, Inc., 09-CV-1406 (NGG)(CLP), 2010 WL 772745, at *4 (E.D.N.Y. Mar. 4, 2010) (concluding that $350

-15-

filing fee is section 1920 taxable cost).  Plaintiff also requests $619.00 in expenses for preparing deposition transcripts two weeks before trial, see Expenses, D.E. #88-1 at 13, which likewise are part of section 1920 costs.  See Anderson, 132 F.Supp.2d at 246.  In addition, the Second Circuit has recognized that subpoena service costs may be allowed under section 1920.  See United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 172 (2d Cir. 1996).  Thus, in accordance with Judge Weinstein's order, these expenses may not be recovered.[9]

In conclusion, plaintiff is not entitled to $2,579.03 of the expenses sought in the current application.  Thus, the Court awards $8,619.21 in expenses.

### D. Retainer Agreement Does Not Alter Plaintiff's Right to Section 1988 Fees

As part of the fee application, plaintiff's counsel submitted his retainer agreement with plaintiff to the Court.  The agreement states that, in exchange for his services, counsel "is authorized to retain out of any monies that may come into Attorney's hands by reason of the above claim: thirty-three percent (33 & 1/3%) of the sum recovered by suit, settlement or otherwise."  Retainer for Investigation Agreement (undated), D.E. #88-1 at 1.  In other words, plaintiff had a contingency fee arrangement with her counsel.

Defendants argue that because the retainer agreement is silent as to plaintiff's counsel's hourly rate, her counsel should be limited solely to the amounts contemplated under the agreement – or, thirty-three percent of the $500 recovered by plaintiff at trial.  See Def. Opp.

---

[9]  But for Judge Weinstein's ruling, these costs would otherwise be recoverable under section 1988.  See Robinson, 2009 WL 3109846, at *10.

at 6-7.

   This argument is easily disposed of.  It is well settled that section 1988 fee awards can

co-exist with private contingency fee arrangements.  See, e.g., Porzig v. Dresdner, Kleinwort,

Benson, N. Am. LLC, 497 F.3d 133, 141 (2d Cir. 2007) ("Courts are regularly called upon to

conduct a reasonable fee analysis even though a lawyer may have taken the case on a

contingent fee."); United States v. Washington, No. 08-CV-5083 (ENV), 2009 WL 6636862,

at *5 (E.D.N.Y. Dec. 14, 2009) ("[T]he mere presence of an agreed-upon percentage

contingency fee should not, by itself, be deemed dispositive, nor should it impose an automatic

ceiling or floor on a fee award."), adopted, 2010 WL 2674537 (E.D.N.Y. June 30, 2010).  In

fact, as plaintiff concedes in her reply, see Pl. Reply at 5, the fee award itself is not paid

directly to plaintiff's counsel, but rather, belongs to the plaintiff.  See Venegas v. Mitchell,

495 U.S. 82, 86-87 (1990).[10]  The award is then subject to whatever private contractual

agreement exists between plaintiff and his or her counsel.  See Astrue v. Ratliff, ___ U.S. ___,

___, 130 S. Ct. 2521, 2529 (2010) ("Our most recent cases applying [section] 1988(b)'s

'prevailing party' language recognize the practical reality that attorneys are the beneficiaries

and, almost always, the ultimate recipients of the fees that the statute awards to 'prevailing

part[ies].'") (citing Venegas, 495 U.S. at 86) (alteration in original); Lijoi v. Cont'l Cas. Co.,

No. 01-CV-4536 (ILG), 2007 WL 708238 (E.D.N.Y. Mar. 1, 2007) (awarding attorney's fee

_____

[10]  Indeed, recent case law concerning nearly identical "prevailing party" fee-shifting language
in the Equal Access to Justice Act holds that the actual check for the attorney's fee award
should be made payable to plaintiff, and not to plaintiff's counsel.  See Scott v. Astrue, No.
08-CV-910A, 2011 WL 32544, at *3 (W.D.N.Y. Jan. 5, 2011).

-17-

to plaintiff, who had contingency arrangement with counsel).

Thus, the retainer agreement between plaintiff and her counsel does not alter plaintiff's

entitlement to section 1988 fees.[11]

## II.  Attorney's Fees and Disbursements Pursuant to 28 U.S.C. § 1927

Finally, citing a different fee-shifting statute, plaintiff argues in the alternative that even

if section 1988 fees are reduced, plaintiff is entitled to recover fees for certain hours worked,

pursuant to 28 U.S.C. § 1927.  See Pl. Mem. at 1, 13.  In particular, plaintiff seeks to recover

the 47.40 hours spent addressing defendants' allegedly frivolous motions filed in bad faith,

including, inter alia, the two summary judgment motions.  See Pl. Mem. at 13; Pl. Reply at 6.

Although the Court is awarding less than the full amount requested by plaintiff, it is

crediting plaintiff with the 47.40 hours spent on the allegedly frivolous motions.  Therefore, as

---

[11]  In his declaration, Mr. Mangan states that his retainer agreement with plaintiff "calls for contingency fee on amounts recovered at trial, and that all attorneys' fees recovered under the appropriate civil rights statutes would be payable to me as counsel."  Mangan Decl. ¶ 7. However, the agreement is, at best, ambiguous as to Mr. Mangan's entitlement to section 1988 fees.  On one hand, there is a provision stating that one-third of "any monies" are to be paid to Mr. Mangan.  See Retainer for Investigation Agreement, D.E. #88-1, at 1. On the other hand, in the agreement, "Client acknowledges that Attorney may receive an award of attorney's fees under civil rights causes of action over and above what is described herein to the extent permissible by law."  Id.  Notably, the agreement does not make clear that the award actually belongs to plaintiff or that plaintiff is assigning her rights in the award to the attorney.

Given that Mr. Mangan drafted the agreement and ambiguities are construed against the drafter, see Shaw v. Mfrs. Hanover Trust Co., 68 N.Y.2d 172, 176 (N.Y. 1986), it is far from clear that he is entitled to recover the full attorney's fees amount, as opposed to only one-third of plaintiff's fee award.  See Babcock v. Rezak, No. 96-CV-0394E(SC), 2004 WL 1574623, at *4 (W.D.N.Y. 2004) (retainer agreement was ambiguous as to attorney's interest in section 1988 fees). As this issue is not presently before the Court, the Court merely notes its disagreement with Mr. Mangan's characterization of his arrangement with plaintiff.

these hours have been awarded under section 1988, the Court need not rule on plaintiff's motion for section 1927 fees.  In any event, it is unlikely that plaintiff could make the requisite bad faith showing required under 28 U.S.C. § 1927.  See, e.g., Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC, No. 06-CV-3893(JFB)(AKT), 2009 WL 2495802, at *5 (E.D.N.Y. Aug. 12, 2009) (defendant not entitled to section 1927 fees where it made conclusory statements regarding plaintiff's bad faith in filing unwarranted motion for reconsideration).

## CONCLUSION

For the reasons set forth above, pursuant to 42 U.S.C. § 1988, plaintiff is entitled to $80,610.00 in attorney's fees and $8,619.21 in expenses, subject to any contractual agreement she has with counsel concerning said fees.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Jack B. Weinstein on or before **November 14, 2011**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**           October 27, 2011**

                        **ROANNE L. MANN**
                        **UNITED STATES MAGISTRATE JUDGE**

-19-